IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS HERNDON,

        Plaintiff,

v.                                                              CIV 14-0162 KBM/RHS

BEST BUY CO., INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Best Buy Stores L.P.'s[1] Motion to Dismiss (*Doc. 11*), filed on February 27, 2014, and fully briefed on April 9, 2014, and Plaintiff's Motion to Certify Question to the Supreme Court of New Mexico (*Doc. 16*), filed March 20, 2014, and fully briefed on May 8, 2014.  Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 73, the parties have consented to me serving as the presiding judge and conducting all proceedings, including trial.  *Doc.15*.  Having read the submissions of the parties and reviewed the relevant law, the Court will grant Defendant's Motion to Dismiss and deny Plaintiff's Motion to Certify.

**I.**     **Background Facts**[2]

Plaintiff Thomas Herndon was employed as general manager of the Best Buy store in Farmington, New Mexico.  During his tenure as general manager, Herndon

---

[1] Best Buy Stores, L.P. ("Best Buy") was erroneously sued as "Best Buy Co., Inc." *Doc. 11* at 1.

[2] These facts are derived from the Complaint (*Doc. 1-1*) as well as facts which are a matter of public record (*Doc. 12*) of which the court takes judicial notice without converting this motion into a motion for summary judgment.  See *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1193 (D.N.M. 2009).

hired James McBride, who had previously been convicted of a felony for armed bank robbery and had recently finished serving his sentence of imprisonment. Herndon subjected Mr. McBride to the usual hiring process required by Best Buy, including a background check and drug test, both of which he passed. Other employees interviewed Mr. McBride and agreed that he should be hired. Herndon did not consult with other management before hiring Mr. McBride, and Best Buy does not have a written policy requiring that he do so.

Best Buy terminated Herndon's employment on September 6, 2013, because his offer of employment to Mr. McBride given the prospective employee's armed robbery conviction was a "questionable hiring decision without partnering with appropriate leadership that could have put the company at risk." *Doc. 1-1* at 2, ¶ 7. In response, Herndon sued Best Buy in the First Judicial District Court for the State of New Mexico for retaliatory discharge grounded in the public policy stated in the Criminal Offender Employment Act ("COEA" or "the Act"), N.M. Stat. Ann § 28-2-1 *et seq.* (1978). Defendant Best Buy removed this action based upon diversity of citizenship and has moved to dismiss Herndon's Complaint. As an alternative to dismissal, Herndon asks this Court to certify a question to the New Mexico Supreme Court. For the following reasons, the Court will decline Herndon's request and dismiss this case for failure to state a viable claim.

## II.  Legal Standards

### A.  Motion to Dismiss pursuant to Rule 12(b)(6)

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held that:

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991).

B.     Motion to Certify

The New Mexico State Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. Stat. Ann. § 39-7-4 (1978); *see*

*also Hartford Ins. Co. of the Midwest v. Cline*, 367 F. Supp. 2d 1342, 1344 (D.N.M. 2005). "The decision to certify 'rests in the sound discretion of the federal court.'" *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 1744 (1974).

Moreover, the Tenth Circuit has cautioned that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). As the Supreme Court has directed,

> In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

*Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943). Thus, "the federal courts have the duty to decide questions of state law even if difficult or uncertain. . . ." *Copier*, 138 F.3d 833, 838 (10th Cir. 1998). A federal court should "'apply judgment and restraint before certifying,' and 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks.'" *Colony Ins. v. Burke,* 698 F.3d 1222, 1236 (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)). "When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

**III.   Discussion**

    A.   Herndon's Motion to Certify

Herndon requests that this Court certify the following question to be answered by

4

the New Mexico Supreme Court:

> Does NMSA 28-2-1 et seq. apply to the hiring process used by private employers or only to employment with the state?

Because the Court is able to settle the question without requesting guidance from the New Mexico courts, certification of the proposed question is unwarranted.

B.  Best Buy's Motion to Dismiss

In New Mexico, "an employee who [does] not have a contract of employment for a definite term [can] be discharged at will, with or without cause." *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647, 777 P.2d 371, 375 (citations omitted). Retaliatory discharge constitutes an exception to this employment "at-will" doctrine and permits "a discharged at-will employee to recover in tort when his discharge contravenes a clear mandate of public policy." *Id.*

> For an employee to recover under [a claim for retaliatory discharge], he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn.

*Vigil v. Arzola,* 102 N.M. 682, 689, 699 P.2d 613, 620 (1983), *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984)). The employee must establish a causal connection between the employee's actions and the retaliatory discharge. *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, 115 N.M. 293, 303, 850 P.2d 996, 1006. Here, there is no dispute that Plaintiff's employment was terminated because he hired a known convicted felon.

"The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'" *Id.* (citing *Vigil*, 102 N.M. at 688, 699 P.2d at 619). A clear mandate of public

5

policy may be garnered from statutes and decisions of the courts.  *Id.*  However, "not every expression of public policy will suffice to state a claim for retaliatory discharge."  *Id.*  An at-will employee must identify a <u>specific</u> expression of public policy upon which he bases his claim for retaliatory discharge.  *Shovelin*, 115 N.M. at 303.  Moreover, "the courts interpreting New Mexico law have adhered to the rule that retaliatory discharge is a <u>narrow exception</u> to the rule of employment at will and have refused to expand its application."  *Id.* at 304 (citations omitted) (emphasis added).  Whether a discharged employee is able to state a sufficient public policy to support his claim for retaliatory discharge is determined by the facts of that particular case.  *Id.*

Plaintiff Herndon has identified the Section 28-1-2 of the COEA as the specific foundation underpinning his claim for retaliatory discharge.  That subsection, entitled "Purpose of Act," reads as follows:

> The legislature finds that the public is best protected when criminal offenders or ex-convicts are given the opportunity to secure employment or to engage in a lawful trade, occupation or profession and that barriers to such employment should be removed to make rehabilitation feasible.

Best Buy contends, however, that the COEA applies only to public employers and certain government agencies and boards.  Therefore, a private employer can terminate an employee even if the termination arose from an employee's action that is consistent with the policy expressed in the COEA.  Accordingly, the determination of whether Herndon states a claim for retaliatory discharge based upon the COEA is a matter of statutory construction.

When construing a state statute, a federal court will generally look to the interpretations of the state's highest court.  *Planned Parenthood of Rocky Mountains Servs. Corp. v. Owens*, 107 F. Supp. 2d 1271, 1281 (D. Colo. 2000), *aff'd*, 287 F.3d 910

6

(10th Cir. 2002) (citing *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir.1995)). While the COEA has been the subject of cases involving public entities, no New Mexico case has determined whether it also applies to private employers.[3] When the state court has not yet interpreted a particular statute, the federal court "must look to the state's rules of statutory construction to determine the legislative intent and the ultimate application of the law." *Id*. The Court is mindful that "[i]n the absence of clear authority from the State's appellate courts that is directly on point, a federal district court sitting in diversity jurisdiction should be reluctant to expand the scope of New Mexico's common law of torts on its own initiative." *Ruiz v. Dollar Tree Stores, Inc.*, 05-cv-0666 MCA/WDS, Doc. 10, at 7 (D.N.M. 2005).

Indeed, "the essence of judicial responsibility [is] to search for and effectuate the legislative intent[.]" *Weiss v. Bd. of Educ. of Santa Fe Pub. Sch.*, 32, 844, 2014 WL 2534073 at *1 (N.M. Ct. App. June 3, 2014) (quoting *Bishop v. Evangelical Good Samaritan Soc.*, 2009-NMSC-036, 146 N.M. 473, 476, 212 P.3d 361, 364) (brackets in original); *see also* N.M. Stat. Ann. § 12-2A-18. A court should first examine the statutory language, "as the text of the statute is the primary indicator of legislative intent." *Id*. A court must also "consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect." *Id*. Finally, the court must consider the legislative intent in light of a statute's practical implications and purpose and should not construe it in a way that the result

---

[3] *See, e.g.*, *Weiss v. New Mexico Bd. of Dentistry*, 110 N.M. 574, 798 P.2d 175 (1990) (applying COEA to State Board of Dentistry); *Garcia v. State Bd. of Educ.*, 102 N.M. 306, 694 P.2d 1371(1984), *cert. denied* 102 N.M. 293, 694 P.2d 1358 (applying COEA to State Board of Education); *Bertrand v. New Mexico State Bd. of Ed.*, 1975-NMCA-145, 88 N.M. 611, 544 P.2d 1176 (same); *McCoy v. New Mexico Real Estate Comm'n*, 1980-NMSC-081, 94 N.M. 602, 603, 614 P.2d 14, 15 (applying COEA to Real Estate Commission); *New Mexico Bd. of Pharmacy v. Reece*, 1983-NMSC-080, 100 N.M. 339, 340, 670 P.2d 950, 951 (applying COEA to Board of Pharmacy*); Varoz v. New Mexico Bd. of Podiatry*, 1986-NMSC-051, 104 N.M. 454, 722 P.2d 1176 (applying COEA to Board of Podiatry).

"would be absurd, unreasonable, or otherwise inappropriate." *Id.*

Herndon proclaims that the language of Section 28-2-2 was intended to encourage <u>all</u> employers, whether private or public, to hire ex-convicts. Plaintiff further argues that when a private employer's decision to fire an employee is based on an employee's action taken in conformance with that public policy, a viable retaliatory discharge claim arises. Best Buy argues that Herndon reads the statute far too broadly, especially given New Mexico's long standing "at-will" employment doctrine and the intrusive effect its application would have on private employers.

Plaintiff relies on the very next section of the COEA which outlines certain exceptions to the policy when <u>public</u> employers, or boards or agencies tasked with licensure responsibilities are permitted to consider a conviction when deciding whether to hire a potential employee. *See* § 28-2-3 (limiting the state's ability to automatically bar a convicted criminal from obtaining public employment or a professional license issued by the state and requiring the public employer take the criminal conviction into account only "after the applicant has been selected as a finalist for the position."). Herndon contends that because those exceptions are given to public entities, the general policy statement set forth in § 28-2-2 must apply to both public and private employers.

I agree with Best Buy, however, that when read as a whole, including the remaining sections of the Act and their titles, it is clear that the COEA was intended to apply only to public entities. For instance, Section 28-2-4 sets forth circumstances when public employment or licensure can be refused, renewed, suspended or revoked

8

based upon a criminal conviction.[4]  Moreover, Section 28-2-5 makes clear that the COEA does not apply to law enforcement agencies – by their nature, a creature of government.  Finally, under the section entitled "Applicability," the Act also expressly provides:

---

[4] N.M. Stat. Ann § 28-2-4 reads as follows:

> A.   Any board or other agency having jurisdiction over employment by the state or any of its political subdivisions or the practice of any trade, business or profession may refuse to grant or renew or may suspend or revoke any public employment or license or other authority to engage in the public employment, trade, business or profession for any one or any combination of the following causes:
>
> (1)   where the applicant, employee or licensee has been convicted of a felony or a misdemeanor involving moral turpitude and the criminal conviction directly relates to the particular employment, trade, business or profession;
>
> (2)   where the applicant, employee or licensee has been convicted of a felony or a misdemeanor involving moral turpitude and the criminal conviction does not directly relate to the particular employment, trade, business or profession, if the board or other agency determines after investigation that the person so convicted has not been sufficiently rehabilitated to warrant the public trust; or
>
> (3)   where the applicant, employee or licensee has been convicted of trafficking in controlled substances, criminal sexual penetration or related sexual offenses or child abuse and the applicant, employee or licensee has applied for reinstatement or issuance of a teaching certificate, a license to operate a child-care facility or employment at a child-care facility, regardless of rehabilitation.
>
> B.   The board or other agency shall explicitly state in writing the reasons for a decision which prohibits the person from engaging in the employment, trade, business or profession if the decision is based in whole or in part on conviction of any crime described in Paragraphs (1) and (3) of Subsection A of this section. Completion of probation or parole supervision or expiration of a period of three years after final discharge or release from any term of imprisonment without any subsequent conviction shall create a presumption of sufficient rehabilitation for purposes of Paragraph (2) of Subsection A of this section.

> The provisions of the Criminal Offender Employment Act [ 28-2-1 NMSA 1978] relating to any board or other agency which has jurisdiction over the practice of any trade, business or profession apply to authorities made subject to its coverage by law, or by any such authorities' rules or regulations if permitted by law.

N.M. Stat. Ann. § 28-2-6.

Thus, the plain language of the Act demonstrates that the legislature intended that the COEA apply only to public entities, not private employers like Defendant Best Buy.  Because the COEA does not provide exceptions for when a private employer might reasonably consider a prior conviction of a prospective employee, as it does for public entities, the Act's general application to private employers would create absurd results.  Would a private daycare center be precluded from denying employment to an individual who had been convicted of child abuse, neglect or abandonment?  Would a private accounting firm be required to hire someone who had been convicted of embezzlement?  Surely if the legislature intended to so restrict a private employer's hiring decisions, it would have provided so expressly and unambiguously, and, undoubtedly, it would have provided for similar exceptions to the general rule that it gave to public employers.  "The Court will not expand New Mexico law in a manner that the state courts have not, especially when such an expansion would, in effect, severely limit at-will employment in New Mexico, an at-will employment state."  *Gonzales v. City of Albuquerque*, 849 F. Supp. 2d 1123, 1171 (D.N.M. 2011) *aff'd*, 701 F.3d 1267 (10th Cir. 2012).  Accordingly, Herndon fails to state a claim for which relief may be granted.

 Wherefore,

**IT IS HEREBY ORDERED** that Best Buy's Motion to Dismiss (*Doc. 11*) is **granted** and Herndon's Motion to Certify (*Doc. 16*) is **denied**.

**IT IS FURTHER ORDERED** that this action will be dismissed with prejudice by a final order entered pursuant to Federal Rule of Civil Procedure 58.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent