IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS HERNDON,
    Plaintiff,

v.                                                                CIV 14-0162 KBM/RHS

BEST BUY CO., INC.,
    Defendant.

## MOTION SEEKING RELIEF FROM JUDGMENT

Thomas Herndon, by and through counsel, moves this Court pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b)(6) for relief from its August 12, 2014 *Memorandum Opinion and Order* [Doc. 25] and *Final Order* [Doc.26], granting Defendant's *Motion to Dismiss* [Doc. 11] and denying *Plaintiff's Motion to Certify* [Doc. 16].

### A. BACKGROUND

Plaintiff was employed as a general manager for Defendant in Farmington, New Mexico. On September 6, 2013, Defendant terminated Plaintiff's appointment because Plaintiff offered employment to a candidate who had been convicted of armed robbery. Plaintiff filed suit for retaliatory discharge in First Judicial District Court for the State of New Mexico, and Defendant removed the action to this Court on February 20, 2014. [Doc. 1] Plaintiff's *Complaint* alleged that Defendant discharged

1

him in retaliation for hiring a person with a criminal background, contrary to New Mexico public policy.  [Doc. 1, Ex. 1 at ¶ 13]

On February 27, 2014, Defendant filed a *Motion to Dismiss,* which for purposes of that motion conceded that Mr. Herndon was fired for hiring the person with the criminal conviction, but argued that New Mexico public policy does not prohibit private employers from refusing to hire individuals with a criminal background.  [Doc. 11 at pp. 4-6]  Specifically, Defendant alleged that NMSA 1978, Section 28-2-3 (2010), which governs the employment eligibility determination for applicants with a criminal background, applies only to government employers.  [Doc. 11 at pp. 4-5]  Plaintiff responded in opposition to Defendant's *Motion to Dismiss* and also filed a *Motion to Certify* the following question: "Does NMSA 282-1 et seq. apply to the hiring process used by private employers or only to employment with the state." [Doc. 16 at p. 1]

This Court granted Defendant's *Motion* and denied Plaintiff's *Motion*.  [Doc. 25 at p. 2]  First the Court determined that certification to the New Mexico Supreme Court was not necessary because the Court was "able to settle the question without requesting guidance from the New Mexico courts" and therefore, "certification of the proposed question [was] unwarranted."  [Doc. 25 at p. 5]  Turning to consider whether the Criminal Offender Employment Act ("COEA"), NMSA 1978, Sections 28-2-1 *et seq.*, applies as to all employers or only public employers, the Court noted "no

New Mexico case has determined whether it also applies to private employers." [Doc. 25 at p. 7] After reviewing the exceptions to the employment eligibility standards that are outlined in the COEA for public employers, the Court determined that the legislature did not intend for the COEA to apply to private employers. [Doc. 25 at pp. 8-10] The Court determined that applying the COEA to all employers, and not just public employers, would constitute an unwarranted expansion of New Mexico law. [Doc. 25 at 10]

In light of the Court's *Opinion*, Plaintiff requests this Court to reconsider its denial of his *Motion to Certify* and grant of Defendant's *Motion to Dismiss* and to certify his amended question to the New Mexico Supreme Court for consideration.

### B. ARGUMENT

### I. Standard for Reconsideration

While the Federal Rules of Civil Procedure do not account for motions to reconsider a ruling, a litigant subject to an adverse judgment may file a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or a motion seeking relief from a judgment pursuant to Fed. R. Civ. P. 60(b). *See Arnold v. Farmers Ins. Co.*, 827 F.Supp.2d 1289, 1292-93 (D.N.M. 2011). Under Rule 59(e), reconsideration is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law."

*Id.* at 1293 (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). A district court may grant relief under Rule 60(b)(6) in extraordinary circumstances, and Rule 60(b)(6) "is a 'grand reservoir of equitable power to do justice in a particular case.'" *Arnold*, 827 F.Supp.2d at 1293 (quoting *Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991).

## II. The Court's Reasoning Demonstrates that Certification is Appropriate

Rule 12-607 NMRA permits this Court to certify questions of law to the New Mexico Supreme Court, "if the answer may be determinative of an issue pending litigation in the certifying court and the question is one for which the answer is not provided by a controlling . . . statute. . . ." The federal court's task in diversity cases "is not to reach its own judgment regarding the substance of the common law, but simply to 'ascertain and apply the state law.'" *Wade v. Emcasco, Inc.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).

If the federal court can "see a reasonably clear and principled course, [it] will seek to follow it itself[,]" without resorting to certification. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). In *Pino*, the Tenth Circuit Court of Appeals considered whether a wrongful death action could be brought on behalf of a stillborn fetus. *Id.* at 1235. In that case, the Oklahoma legislature had amended the wrongful death statute

4

to allow claims like the plaintiffs' but did not make the amendment retroactive. *Id*. at 1237. The *Pino* Court determined that certification to the state court was appropriate because the statutory history was suggestive but not definitive, and the common law did not address the question presented. *Id.*. The *Pino* Court also weighed the state supreme court's prior reluctance, in an earlier case, to answer the question at issue in *Pino* because the earlier case did not directly raise the *Pino* issue. *Id*. at 1237-38 ("At the same time, the court explicitly limited its holding to nonviable fetuses born alive, indicating that '[f]actors not considered in today's opinion may bear on whether liability should be extended to the wrongful death of a nonviable, stillborn fetus' under the pre-2005 wrongful death statute. [*Nealis v. Baird*, 1999 OK 98, 996 P.2d 438, 455 (Okla. 1993)] This careful acknowledgment and reservation makes it both difficult and unwise for this court to predict how the Oklahoma Supreme Court would decide the question of state law presented by this case.").

In the present case, whether the COEA creates a cause of action for an employee denied employment based on his criminal history is a question separate and distinguishable from whether the COEA establishes a general public policy for the State of New Mexico that "the public is best protected when criminal offenders or ex-convicts are given the opportunity to secure employment or to engage in a lawful trade, occupation or profession and that barriers to such employment should be

5

removed to make rehabilitation feasible." Section 28-2-2. This Court analyzed the subsections of COEA and determined that because the COEA exceptions and licensure requirements appear to apply to public employers, the entire statute, including the general policy statement in Section 28-2-2, applies only to public employers. [Doc. 25 at pp. 8-10] Simultaneously, however, this Court correctly acknowledged, "no New Mexico case has determined whether [COEA] also applies to private employers." [Doc. 25 at p. 7] Neither the COEA nor any New Mexico case law addresses whether the COEA expresses a public policy—as opposed to a cause of action— that applies to all employers in the State of New Mexico.

Further, similar to the state supreme court in *Pino*, the New Mexico Supreme Court has considered the law of retaliatory discharge carefully on a case-by-case basis. *Shovelin*, 1993-NMSC-015, ¶ 26, 115 N.M. 293. The *Shovelin* Court reviewed numerous cases alleging retaliatory discharge and set forth the reasons why one set of facts established a sufficient public policy but another factual scenario was insufficient. *Id.* The *Shovelin* Court addressed two statutes that provide protection for employees without providing a remedy and concluded that a wrongfully discharged worker can have "an implied remedy" in circumstances in which the State's interest is vindicated by criminal action against the employer but the employee is left without recourse. *Id.* ¶ 28. The Court

6

continued to consider statutes "defining public policy without specifying either right or remedy." *Id.* ¶ 30. The *Shovelin* plaintiff identified "several statutes that, under the proper circumstances, may [have been] sufficient to support an action for retaliatory discharge" but for which that plaintiff did not allege sufficient facts. *Id.* ¶ 31. The *Shovelin* Court's painstaking analysis establishes that whether public policy can form the basis for a retaliatory discharge claim is fact and case-specific, not a question of law. These judicially recognized rights and remedies stand or fall on the facts of a particular case, making it "difficult . . . for this [C]ourt to predict" how the New Mexico Supreme Court would decide the particular policy question presented. *Pino*, 507 F.3d at 1237-38.

The question remains in New Mexico whether a wrongfully discharged worker can have an implied remedy in circumstances in which the statute's intended beneficiary may have no recourse, but the plaintiff nevertheless was terminated for comporting with New Mexico public policy. Plaintiff therefore seeks to amend his question for certification to specifically reflect this undecided area of New Mexico law:

1. Does the policy statement set forth by the Legislature in NMSA 1978, Section 28-2-2 (1974) create an implied remedy for employees who are terminated by a private employer in retaliation for compliance with this long-established public policy?

7

Respectfully, this federal Court should not artificially narrow the broad policy that the New Mexico Legislature set forth in the COEA. [**See Doc. 25 at p. 10**] Whether the Legislature intended for the COEA to establish a policy for all employers is a question that is not explicitly answered by the statute, and is not decided in New Mexico common law, and the New Mexico Supreme Court has been reluctant to establish a generalized rule for the fact-specific public-policy analysis in retaliatory discharge cases. The New Mexico Supreme Court has also made clear that when interpreting New Mexico Statutes, that courts should not read into statutes things that are not there, here, an exception to whether the public policy pronouncement in the statute does not apply to private employers. *Republican Party of New Mexico v. New Mexico Taxation and Revenue Dept.*, 2012-NMSC-026, ¶ 16. Given that no "reasonably clear and principled course" can be drawn to make clear the intent of the Legislature, this Court should reconsider its denial of Plaintiff's *Motion to Certify*. Pino, 507 F.3d at 1236.

### C. CONCLUSION

Plaintiff requests this Court to (1) reconsider its August 12, 2014 *Memorandum Opinion and Order*, (2) vacate it's decision on Defendant's

8

*Motion to Dismiss*, and (3) stay that matter while it certifies Plaintiff's amended question to the New Mexico Supreme Court.

Respectfully submitted,

/s/ Timothy L. White
Valdez and White Law Firm, LLC
Timothy L. White
P.O. Box 25646
Albuquerque, NM 87125
Phone: (505) 345-0289
Fax: (505) 345-2573

CERTIFICATE OF SERVICE

This is to certify that this notice was emailed via the Court's CM/ECF system on September 4, 2014, to the following counsel of record:

George McFall
P.O. Box 2168
Albuquerque, NM 87103

Rishi Puri
2029 Century Park East, Suite 3500
Los Angeles, CA 90067


/s/ Timothy L. White